**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | | |
|---|---|---|
| **KATHLEEN SMITH, on behalf of herself, and as representative of a class of participants and beneficiaries on behalf of the Humana Retirement Savings Plan,**<br><br>*Plaintiff,*<br><br>vs.<br><br>**HUMANA, INC., THE HUMANA RETIREMENT PLANS COMMITTEE, AND JOHN AND JANE DOES 1-30,**<br><br>*Defendants.* | § § § § § § § § § § § § § § § § | **CLASS ACTION**<br><br>**Civil Action No. 3:25-cv-727-GNS**<br><br>**Oral Argument Requested** |

<u>**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**</u>

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................................................ 1

II.   BACKGROUND .......................................................................................................... 2

    A.    Forfeitures Under the Humana Plan ................................................................. 2

    B.    Plaintiff's Claims ............................................................................................. 4

III.  LEGAL STANDARD................................................................................................... 5

IV.   ARGUMENT................................................................................................................ 5

    A.    Plaintiff's Claims for Breach of Fiduciary Duty in Counts I and II Fail for
        Multiple Reasons .............................................................................................. 6

        1.    Counts I and II Fail at the Threshold Because They Challenge a
            Non-Fiduciary, Settlor Decision ................................................................. 6

        2.    The Complaint Does Not Plausibly Allege a Breach of ERISA's
            Duties of Loyalty or Prudence Based on the Use of Forfeitures to
            Offset Employer Contributions.................................................................... 8

            a.    Plaintiff's Loyalty Allegations Suffer From the Same
                Defects That Have Led Numerous Courts to Dismiss
                Analogous Forfeiture Claims........................................................... 9

            b.    Plaintiff's Allegations of Imprudence Mirror Those Courts
                 Have Repeatedly Held Are Insufficient to State a Claim ............ 12

    B.    Plaintiff's Claim for Alleged Imprudent Delay in Using Forfeitures (Count
        III) Is Also Implausible and Must Be Dismissed.............................................. 14

    C.    The Complaint Does Not State a Claim for Violation of ERISA's Anti-
        Inurement Rule................................................................................................ 16

    D.    The Complaint Fails to State a Prohibited Transaction Claim .......................... 18

    E.    Plaintiff's Derivative Claim for Failure to Monitor Fails as a Matter of
        Law ................................................................................................................. 21

V.    CONCLUSION............................................................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aldridge v. Lily-Tulip, Inc. Salary Ret. Plan Benefits Comm.*,
  953 F.2d 587 (11th Cir. 1992) ....................................................................................... 17

*Armenta v. WillScot Mobile Mini Holdings Corp.*,
  2025 WL 2645518 (D. Ariz. Sept. 15, 2025) ................................................................ 11–12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ......................................................................................................... 5

*Barragan v. Honeywell Int'l Inc.*,
  2024 WL 5165330 (D.N.J. Dec. 19, 2024) ...................................................... 11, 13, 17, 21

*Barragan v. Honeywell Int'l Inc.*,
  2025 WL 2383652 (D.N.J. Aug. 18, 2025), *appeal docketed*, No. 25-2609 (3d
  Cir. Aug. 22, 2025) .................................................................................................... 11, 14

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ......................................................................................................... 5

*Black v. Greater Bay Bancorp Exec. Supplemental Comp. Benefits Plan*,
  2017 WL 8948732 (N.D. Cal. Jan. 18, 2017) ................................................................. 20

*Bozzini v. Feguson Enters. LLC*,
  2025 WL 1547617 (N.D. Cal. May 29, 2025) .................................................................. 11

*Brewer v. All. Coal, LLC*,
  2025 WL 3527171 (N.D. Okla. Dec. 9, 2025) ............................................................... 8, 13

*Brown v. Peco Foods, Inc.*,
  2025 WL 3210857 (S.D. Miss. Nov. 14, 2025) ......................................................... 11, 19, 20

*Cain v. Siemens Corp.*,
  2025 WL 2172684 (D.N.J. July 31, 2025) .................................................................... 1, 13

*Cano v. Home Depot, Inc.*,
  2025 WL 2589567 (N.D. Ga. Aug. 26, 2025), *appeal dismissed*, No. 25-13158-
  JJ, 2025 WL 3700579 (11th Cir. Dec. 1, 2025) ............................................................. 13

*Chao v. Hagemeyer N. Am., Inc.*,
  2006 WL 8443663 (D.S.C. Oct. 20, 2006) ..................................................................... 20

*Coulter v. Morgan Stanley & Co. Inc.*,
  753 F.3d 361 (2d Cir. 2014) ............................................................................................ 7

*Cunningham v. Cornell Univ.*,
  604 U.S. 693 (2025) ......................................................................................................... 18

*del Bosque v. Coca-Cola Sw. Beverages LLC*,
  2025 WL 3171326 (N.D. Tex. Nov. 13, 2025) ........................................................... 11, 12

*Dimou v. Thermo Fisher Sci. Inc.*,
  2024 WL 4508450 (S.D. Cal. Sept. 19, 2024) ........................................................... passim

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Dimou v. Thermo Fisher Sci. Inc.*,
  2025 WL 2611240 (S.D. Cal. Sept. 9, 2025), *appeal docketed*, No. 25-6364
  (9th Cir. Oct. 9, 2025) ............................................................................. 11, 14

*Donelson v. Meijer, Inc.*,
  2025 WL 3754241 (W.D. Mich. Dec. 29, 2025) ................................................. passim

*Estay v. Ochsner Clinic Found.*,
  2025 WL 2644782 (E.D. La. Sept. 15, 2025) ........................................................... 21

*Fifth Third Bancorp v. Dudenhoeffer*,
  573 U.S. 409 (2014) ..................................................................................... 5, 13

*Fritz v. Charter Twp. of Comstock*,
  592 F.3d 718 (6th Cir. 2010) ................................................................................ 5

*Fumich v. Novo Nordisk Inc.*,
  2025 WL 2399134 (D.N.J. Aug. 19, 2025) .............................................................. 11

*Garner v. Northrop Grumman Corp.*,
  2025 WL 3488657 (E.D. Va. Dec. 4, 2025) ............................................................ 17

*Hernandez v. AT&T Servs., Inc.*,
  2025 WL 3208360 (C.D. Cal. Nov. 14, 2025) ................................................... passim

*Holliday v. Xerox Corporation*,
  732 F.2d 548 (6th Cir. 1984) ...................................................................... 10, 18

*Hughes Aircraft Co. v. Jacobson*,
  525 U.S. 432 (1999) ................................................................................... 16, 17

*Hutchins v. HP Inc.*,
  737 F. Supp. 3d 851 (N.D. Cal. 2024) ................................................ 11, 13, 18, 21

*Hutchins v. HP Inc.*,
  767 F. Supp. 3d 912 (N.D. Cal. 2025), *appeal docketed*, No. 25-826 (9th Cir.
  Feb. 7, 2025) ....................................................................................... passim

*Krohnengold v. New York Life Ins. Co.*,
  2022 WL 3227812 (S.D.N.Y. Aug. 10, 2022) ......................................................... 17

*Liao v. Fisher Asset Mgmt., LLC*,
  2024 WL 4351869 (N.D. Cal. Sept. 30, 2024) .................................................... 19–20

*Liao v. Fisher Asset Mgmt., LLC*,
  2025 WL 1696556 (N.D. Cal. June 16, 2025), *appeal docketed*, No. 25-4379
  (9th Cir. July 16, 2025) ...................................................................................... 18

*Lockheed Corp. v. Spink*,
  517 U.S. 882 (1996) ..................................................................................... 6, 20

*Loomis v. Exelon Corp.*,
  658 F.3d 667 (7th Cir. 2011), *abrogated on other grounds by Hughes v. Nw.
  Univ.*, 595 U.S. 170 (2022) ................................................................................. 7

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Madrigal v. Kaiser Found. Health Plan, Inc.*,
  2025 WL 1299002 (C.D. Cal. May 2, 2025) ...................................................... 16, 17

*Maez v. Mountain States Tel. & Tel.*,
  54 F.3d 1488 (10th Cir. 1995) ...................................................................... 17

*McWashington v. Nordstrom, Inc.*,
  2025 WL 1736765 (W.D. Wash. June 23, 2025) ................................................. 7, 13

*Middleton v. Amentum Parent Holdings, LLC*,
  2025 WL 2229959 (D. Kan. Aug. 5, 2025) ............................................................ 18

*Naylor v. BAE Sys., Inc.*,
  2024 WL 4112322 (E.D. Va. Sept. 5, 2024) ...................................................... 7, 19

*Pegram v. Herdrich*,
  530 U.S. 211 (2000)......................................................................................... 6

*Petroff v. Ret. Benefit Plan of Am. Airlines, Inc.*,
  2015 WL 13917970 (C.D. Cal. July 28, 2015)...................................................... 7

*Polanco v. WPP Grp. USA, Inc.*,
  2025 WL 3003060 (S.D.N.Y. Oct. 27, 2025)........................................ 11, 13, 14, 20

*Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*,
  541 U.S. 1 (2004).......................................................................................... 17

*Sievert v. Knight-Swift Transportation Holdings, Inc.*,
  780 F. Supp. 3d 870 (D. Ariz. 2025) .............................................................. 18, 21

*Tillery v. WakeMed Health & Hosps.*, 2026 WL 125784 (E.D.N.C. Jan. 15, 2026) ............. passim

*Wright v. JPMorgan Chase & Co.*,
  2025 WL 1683642 (C.D. Cal. June 13, 2025), *appeal docketed*, No. 25-4235
  (9th Cir. July 9, 2025) ................................................................................ 7, 17

**Statutes**

29 U.S.C. § 1002(21)(A)(i)................................................................................... 6

29 U.S.C. § 1103(c)(1)....................................................................................... 16

29 U.S.C. § 1104(a)(1)....................................................................................... 11

29 U.S.C. § 1104(a)(1)(A) .................................................................................... 9

29 U.S.C. § 1104(a)(1)(A)(i) ..................................................................... 9, 11, 12

29 U.S.C. § 1104(a)(1)(B) ................................................................................... 12

29 U.S.C. § 1106(a) ......................................................................................... 18

29 U.S.C. § 1106(a)(1)....................................................................................... 19

29 U.S.C. § 1106(b) ......................................................................................... 19

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

**Regulations**

26 C.F.R. § 1.401-7(a) ....................................................................................................... 3

**Other Authorities**

2010 Newsletter of the Employee Plans Office of the IRS Tax Exempt & Govt.
    Entities Div., (Ret. News for Employers, Vol. 7, Spring 2010),
    https://www.irs.gov/pub/irs-pdf/p4278.pdf ........................................................ 3, 15

H.R. Rep. No. 99-841, Vol. II (1986) .................................................................................. 3

Use of Forfeitures in Qualified Retirement Plans, 88 Fed. Reg. 12282 (Feb. 27,
    2023) .............................................................................................................. 3–4, 16

Defendants Humana Inc. and the Humana Retirement Plans Committee (collectively, "Defendants") move to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that Plaintiff's Complaint fails to state a claim on which relief can be granted. Pursuant to Local Rule 7.1(f), Defendants request oral argument on this motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.        INTRODUCTION

This case is one of dozens filed against sponsors of large retirement plans in the last two years seeking to challenge the widespread, long-standing practice of reallocating forfeitures—employer contributions made on behalf of employees who left their jobs before the contributions vested—as contributions for other participants who remain in the plan.  Plaintiff does not dispute that both the terms of the Humana Retirement Savings Plan (the "Plan") and decades-old Treasury Department guidance permitted Defendants to use forfeitures in this way, but contends that Defendants nonetheless violated the Employee Retirement Income Security Act of 1974 ("ERISA") by not choosing instead to use forfeitures to pay Plan administrative expenses that Humana never committed to pay.

Plaintiff's allegations that Defendants violated ERISA by allocating forfeitures in a manner expressly permitted by the Plan document and long-standing Treasury Department guidance fail to state a claim.  "[A] growing number of district court decisions"—more than twenty, including the only court in this Circuit that has addressed the issue, *Donelson v. Meijer, Inc.*, 2025 WL 3754241 (W.D. Mich. Dec. 29, 2025)—have rejected the same theories pressed by Plaintiff here and dismissed analogous claims on the pleadings.  *Cain v. Siemens Corp.*, 2025 WL 2172684, at *4 (D.N.J. July 31, 2025).  The Complaint provides no basis for this Court to reach a different result.

1

Indeed, Plaintiff's claims ultimately amount to a back-door attack on the decision to permit forfeitures to be applied as employer contributions in the first place, and that is a plan-design decision made in a "settlor" capacity, not a fiduciary one. But even if Plaintiff's claims targeted fiduciary conduct subject to ERISA's fiduciary provisions, they still would go nowhere. ERISA does not impose a freewheeling duty "to maximize pecuniary benefits"; it protects only the benefits promised under a plan. *Hutchins v. HP Inc.*, 767 F. Supp. 3d 912, 924 (N.D. Cal. 2025) ("*Hutchins II*"), *appeal docketed*, No. 25-826 (9th Cir. Feb. 7, 2025). Where, as here, a plan makes no promise that forfeitures will be used to pay expenses participants otherwise bear, nothing in ERISA requires forfeitures to be used in that way. And the near-categorical rule implicit in Plaintiff's claims— that, absent a risk that the employer will be unable to satisfy its contribution obligations, forfeitures *must* be used to pay administrative expenses whenever possible, *see* Complaint, ECF No. 1 ("Compl.") ¶ 65—is incompatible with the context-specific inquiry dictated by ERISA's duty of prudence. Plaintiff's claims for violation of ERISA's anti-inurement and prohibited transaction provisions are variations on the same theme as her fiduciary breach claims, and those theories likewise have been rejected by courts across the country.

For these reasons and as further explained below, the Complaint should be dismissed in its entirety.

## II.    BACKGROUND

### A.    Forfeitures Under the Humana Plan

Humana, a health insurance company based in Louisville, offers its employees the opportunity to participate in a defined-contribution retirement plan governed by ERISA. The Plan is funded through a combination of contributions made by participants and Humana. *See* Compl. ¶ 26. While Plan participants are immediately vested in their own contributions, contributions made by Humana are subject to vesting requirements. *Id.* ¶ 27. If a participant leaves the Company

2

before becoming fully vested in any employer contributions, the unvested employer contributions are "forfeited." *Id*. ¶ 28. Funds that are forfeited remain in the Plan, but the participant on whose behalf they were originally contributed loses any right to them. *See id.* ¶¶ 28–29.

Forfeitures are a common occurrence, and while ERISA does not directly address forfeitures or mandate how plans must handle them, the Tax Code and Treasury Department regulations do. The Tax Code sets out various requirements that, if satisfied, qualify a retirement plan for preferential tax treatment. In connection with these provisions, in 1963, the Treasury Department promulgated a regulation prohibiting the use of forfeitures to "increase the benefits any employee would otherwise receive" and requiring forfeitures to be used "as soon as possible to reduce the employer's contributions under the plan"—*i.e.*, to reduce the amount of new funds paid into the plan by counting forfeitures towards the employer's contribution obligations—while permitting plans to "anticipate the effect of forfeitures in determining the costs under the plan." 26 C.F.R. § 1.401-7(a). That regulation, which remains in effect today, has been reinforced in regulatory and legislative pronouncements over the last several decades. *See, e.g.*, H.R. Rep. No. 99-841, Vol. II at 442 (1986) (recognizing defined contribution plans may use forfeitures "to reduce future employer contributions or administrative costs"); 2010 Newsletter of the Employee Plans Office of the IRS Tax Exempt & Govt. Entities Div., at 4–5 (Ret. News for Employers, Vol. 7, Spring 2010), https://www.irs.gov/pub/irs-pdf/p4278.pdf (explaining "Revenue Ruling 84-156 states that forfeitures may be used to pay for a plan's administrative expenses and/or to reduce employer contributions"). Most recently, in 2023, the Treasury Department issued a proposed rule that would amend the 1963 regulation to "clarify that forfeitures arising in any defined contribution plan" may be used, consistent with plan terms, "(1) to pay plan administrative expenses, (2) to reduce employer contributions under the plan, or (3) to increase benefits in other participants'

3

accounts in accordance with plan terms." Use of Forfeitures in Qualified Retirement Plans, 88 Fed. Reg. 12282, 12283 (Feb. 27, 2023); *see id.* at 12285 (proposed amendments to 26 C.F.R. § 1.401-7(a)).

Consistent with this regulatory framework, the document governing the Humana Plan specifies how forfeitures may be used. From the start of the relevant period in 2019 until January 1, 2025, the Plan document expressly allowed forfeitures to be used, among other things, both to offset employer contributions and to pay Plan administrative expenses, and did not prioritize either option over the other. *See* Compl. ¶ 59. Effective January 1, 2025, the Plan document was amended to explicitly prioritize use of forfeitures as employer contributions and to permit forfeitures to be used to pay Plan expenses only if amounts remained after the employer-contribution allocation. *See id.*

### B.    Plaintiff's Claims

Plaintiff is a former Humana employee and participant in the Plan. Compl. ¶¶ 12–14. She asserts seven claims on behalf of herself and a putative class of participants and beneficiaries in the Plan from November 12, 2019 through the present. Counts I and II assert breaches of ERISA's fiduciary duties of loyalty and prudence based on the use of forfeitures to offset employer contributions rather than to pay administrative expenses charged to participants. *See* Compl. ¶¶ 82–93, 94–103. Count III alleges a breach of the duty of prudence based on a purported failure to timely exhaust Plan forfeitures in the year they were incurred. *See id.* ¶¶ 104–17. Count IV asserts a violation of ERISA's anti-inurement provision, 29 U.S.C. § 1103(c)(1), based on use of forfeitures to offset employer contributions, Compl. ¶¶ 118–23, and Counts V and VI assert violations of ERISA's prohibited transaction provisions in 29 U.S.C. § 1106(a)(1) and (b)(1) based on the same conduct, Compl. ¶¶ 124–33, 134–40. In Count VII, Plaintiff asserts a derivative claim

4

against Humana for allegedly failing to monitor fiduciaries responsible for administering forfeitures. *Id.* ¶¶ 141–49.

Defendants now move to dismiss the Complaint.

## III.    LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims alleged in a complaint.  To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  A "plaintiff's obligation to provide the 'grounds' of [her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  While the Court must accept well-pleaded facts as true, legal conclusions "'couched as … factual allegation[s]' need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (citation omitted).  Instead, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations and quotation marks omitted).

The Supreme Court has recognized that motions to dismiss are an "important mechanism for weeding out meritless claims" in ERISA cases, and has instructed courts considering such motions to engage in "careful, context-sensitive scrutiny" of a complaint's allegations. *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014).

## IV.    ARGUMENT

As the large majority of courts that have considered materially the same claims have concluded, the Complaint's allegations do not state a viable claim under ERISA.

**A.    Plaintiff's Claims for Breach of Fiduciary Duty in Counts I and II Fail for Multiple Reasons**

In Counts I and II, Plaintiff alleges that Defendants breached ERISA's fiduciary duties of loyalty and prudence by consistently allocating forfeitures to offset Humana's contributions to the Plan rather than to pay administrative expenses otherwise charged to participants. Compl. ¶ 3. According to Plaintiff, Defendants impermissibly acted in their own self-interest in choosing to use forfeitures as employer contributions and failed to prudently investigate which option would most benefit participants. Compl. ¶¶ 41, 67. Plaintiff's claims of fiduciary breach suffer from multiple pleading defects that require dismissal.

**1.    Counts I and II Fail at the Threshold Because They Challenge a Non-Fiduciary, Settlor Decision**

Plaintiff's claims that Defendants breached their duties by using forfeitures to offset employer contributions fail at the outset, because the Complaint does not plausibly allege that the decision about how to allocate forfeitures was made in a fiduciary, rather than settlor, role.

Under ERISA, a person can be a fiduciary for some purposes but not others; fiduciary status attaches only "to the extent" that a person is performing a fiduciary function. 29 U.S.C. § 1002(21)(A)(i); *see Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996). The "threshold question" with respect to any fiduciary breach claim is therefore whether the defendant "was acting as a fiduciary (that is, performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). Fiduciary functions *do not* include matters of "plan design," and thus an employer does not act in a fiduciary capacity when making decisions about the terms of the plan and what benefits will be provided thereunder. *See Spink*, 517 U.S. at 890–91.

Counts I and II do not state a claim for breach of fiduciary duty because they target a quintessential plan-design choice: whether and to what extent the employer will cover plan

6

administrative expenses and contribute funds to the plan on participants' behalf.  Such decisions are made in a non-fiduciary, settlor capacity and are not subject to fiduciary review.  *See, e.g.*, *Coulter v. Morgan Stanley & Co. Inc.*, 753 F.3d 361, 367 (2d Cir. 2014) ("'Settlor' functions … include … decisions relating to the timing and amount of contributions."); *Loomis v. Exelon Corp.*, 658 F.3d 667, 671 (7th Cir. 2011) (decision of "whether to cover [plan] expenses is a question of plan design, not of administration"), *abrogated on other grounds by Hughes v. Nw. Univ.*, 595 U.S. 170 (2022); *Petroff v. Ret. Benefit Plan of Am. Airlines, Inc.*, 2015 WL 13917970, at *14 (C.D. Cal. July 28, 2015) ("Funding a plan is a settlor function.").

The Complaint attempts to characterize the allocation of forfeitures as a fiduciary decision by emphasizing that, before 2025, the Plan document allowed forfeitures to be used in multiple ways.  *See* Compl. ¶ 59; *see also id.* ¶ 30.  But Humana's choice to authorize multiple uses of forfeitures when designing the Plan was a *settlor* choice, just as Plaintiff appears to concede that Humana's later decision to establish a fixed order of priorities for the use of forfeitures was, *see* Comp. ¶¶ 39, 59.[1]  By asserting that Defendants were legally required to use forfeitures to pay Plan administrative expenses rather than fund employer contributions, Plaintiff in effect is challenging the design of the Plan from 2019 until 2025, and seeking to nullify Humana's choice, as settlor, to place multiple potential uses of forfeitures on equal footing.

That the Plan document allowed forfeitures to be used for multiple purposes does not make the choice among those options a fiduciary one.  Deciding how to allocate forfeitures directly

---

[1] Courts agree that where plan terms dictate a particular use of forfeitures, the allocation of forfeitures as specified under the plan does not involve any fiduciary discretion.  *See, e.g.*, *McWashington v. Nordstrom, Inc.*, 2025 WL 1736765, at *13–14 (W.D. Wash. June 23, 2025); *Wright v. JPMorgan Chase & Co.*, 2025 WL 1683642, at *4 (C.D. Cal. June 13, 2025), *appeal docketed*, No. 25-4235 (9th Cir. July 9, 2025); *Naylor v. BAE Sys., Inc.*, 2024 WL 4112322, *5–6 (E.D. Va. Sept. 5, 2024).

implicates the questions of whether the employer will pay for plan administrative expenses and how much it will contribute to the plan. Those are non-fiduciary, settlor decisions whether they are made when the plan document is drafted (by establishing a fixed order of priorities for forfeitures) or thereafter (by choosing among options authorized under the plan). *Cf. Hutchins II*, 767 F. Supp. 3d at 922 (holding that where plan permitted multiple uses of forfeitures, administrator could use forfeitures to pay administrative expenses only if plan sponsor, "as settlor," "decided that year that the Plan administrator should use at least some forfeitures to pay Plan expenses"). Because Counts I and II challenge a non-fiduciary, settlor decision, those claims must be dismissed.

> **2.    The Complaint Does Not Plausibly Allege a Breach of ERISA's Duties of Loyalty or Prudence Based on the Use of Forfeitures to Offset Employer Contributions**

Even if choosing to use forfeitures as employer contributions were a fiduciary decision, Counts I and II still would fail because the Complaint does not plausibly allege a *breach* of ERISA's duties of loyalty or prudence, as numerous courts have concluded when confronted with materially the same claims. *See, e.g.*, *Brewer v. All. Coal, LLC*, 2025 WL 3527171, at *8 (N.D. Okla. Dec. 9, 2025) (collecting cases). That conclusion has been endorsed by the Department of Labor in recent *amicus* briefs filed in support of defendants facing forfeiture claims like those asserted here. *See* Brief for the U.S. Sec'y of Lab. as Amicus Curiae Supporting Defendants-Appellees, *Wright v. JPMorgan Chase & Co.,* No. 25-4235, ECF No. 41-1 (9th Cir. Jan. 8, 2026); Brief for the U.S. Sec'y of Lab. as Amicus Curiae Supporting Defendant-Appellee, *Hutchins v. HP Inc.*, No. 25-826, ECF No. 24 (9th Cir. July 9, 2025). The rationale adopted by other courts and backed by the Department of Labor requires dismissal of Plaintiff's claims.

a.    *Plaintiff's Loyalty Allegations Suffer From the Same Defects That Have Led Numerous Courts to Dismiss Analogous Forfeiture Claims*

ERISA's duty of loyalty requires a fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries" and act "for the exclusive purpose" of "providing benefits to participants and their beneficiaries" and "defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). Plaintiff's theory of disloyalty reduces to the proposition that, whenever the document governing a plan allows forfeitures to be used to pay expenses otherwise charged to participants, the duty of loyalty *requires* forfeitures to be used for that purpose before they may be allocated as employer contributions, because that approach maximizes the amount of money in participants' accounts. Compl. ¶¶ 34–35. Exactly the same theory has been advanced in numerous other cases, and the overwhelming majority of courts have rejected it—including the only court in this Circuit that has decided the issue. *See Donelson v. Meijer, Inc.*, 2025 WL 3754241, at *2–4 (W.D. Mich. Dec. 29, 2025).

*Donelson* is directly on point. In *Donelson*, as here, the plaintiffs asserted that ERISA's duty of loyalty required forfeitures to be used to reduce participant-paid administrative expenses, rather than offset employer contribution obligations, where the documents governing the plan allowed both uses. *Id.* at *1–2. The court rejected that theory and dismissed the plaintiffs' claim. As the court explained, ERISA's duty of loyalty requires a fiduciary to act "'for the exclusive purpose of ... providing *benefits* to participants and their beneficiaries,'" and that framing indicates that the "duty is understood relative to the plan that specifies the relevant benefits." *Id.* at *2 (quoting 29 U.S.C. § 1104(a)(1)(A)(i)). In other words, the "apparently limitless duty of loyalty" under ERISA "is implicitly circumscribed by the plan at issue and its promise of benefits," and the "implicit limitations" on the duty of loyalty apply no less to defined contribution plans than to defined benefit plans. *Id.* at *2–3. The key question, then, was whether the plan created an

9

entitlement to have forfeitures allocated to pay expenses participants would otherwise bear. By permitting forfeitures to be used either to offset employer contributions or pay plan expenses, the plan "promised nothing" about which option would be chosen. *Id.* at *3. Absent such a promise, allocating forfeitures in a way expressly permitted under the plan did not plausibly suggest any disloyalty. *Id.*

*Donelson* also found support for that conclusion in *Holliday v. Xerox Corporation*, 732 F.2d 548 (6th Cir. 1984), where the Sixth Circuit held that an employer did not violate ERISA by transferring amounts from one employer-sponsored pension account to another, which had the effect of increasing the amounts offset from the employer's obligations under a guaranteed income plan. *See* 732 F.2d at 549–50. The plaintiff argued that this decision provided an impermissible "benefit" to the employer by reducing the amount it was required to contribute to fund the guaranteed benefit, but the Sixth Circuit disagreed. *See id.* at 551. There was no ERISA violation based on the transfer of assets from one pension account to another, the court explained, because the employer "could have accomplished the same result" by amending the guaranteed income plan to provide that amounts in both pension accounts, rather than just one of them, would be offset against the employer's guaranteed payment obligations. *Id.* The same basic principle also sunk the *Donelson* plaintiffs' claims of disloyalty based on allocation of forfeitures, because the defendant likewise "had discretion as a matter of plan design regarding the use of forfeitures" and "did not eliminate that discretion" by designing the plan document to allow forfeitures to be used in different ways. *Donelson*, 2025 WL 3754241, at *4.

The result in *Donelson* aligns with numerous other cases that have likewise dismissed forfeiture-based claims of disloyalty at the pleadings stage based on the same fundamentally flawed theory advanced in *Donelson* and this case. *See, e.g.*, *Tillery v. WakeMed Health & Hosps.*,

10

2026 WL 125784, at *5 (E.D.N.C. Jan. 15, 2026); *Hernandez v. AT&T Servs., Inc.*, 2025 WL 3208360, at *4 (C.D. Cal. Nov. 14, 2025); *del Bosque v. Coca-Cola Sw. Beverages LLC*, 2025 WL 3171326, at *4 (N.D. Tex. Nov. 13, 2025); *Polanco v. WPP Grp. USA, Inc.*, 2025 WL 3003060, at *6 (S.D.N.Y. Oct. 27, 2025); *Armenta v. WillScot Mobile Mini Holdings Corp.*, 2025 WL 2645518, at *4–5 (D. Ariz. Sept. 15, 2025); *Dimou v. Thermo Fisher Sci. Inc.*, 2025 WL 2611240, at *6 (S.D. Cal. Sept. 9, 2025) ("*Dimou II*"), *appeal docketed*, No. 25-6364 (9th Cir. Oct. 9, 2025); *Dimou v. Thermo Fisher Sci. Inc.*, 2024 WL 4508450, at *9 (S.D. Cal. Sept. 19, 2024) ("*Dimou I*"); *Fumich v. Novo Nordisk Inc.*, 2025 WL 2399134, at *7 (D.N.J. Aug. 19, 2025); *Barragan v. Honeywell Int'l Inc.*, 2025 WL 2383652, at *3 (D.N.J. Aug. 18, 2025) ("*Barragan II*"), *appeal docketed*, No. 25-2609 (3d Cir. Aug. 22, 2025); *Barragan v. Honeywell Int'l Inc.*, 2024 WL 5165330, at *4–5 (D.N.J. Dec. 19, 2024) ("*Barragan I*"); *Bozzini v. Feguson Enters. LLC*, 2025 WL 1547617, at *2 (N.D. Cal. May 29, 2025); *Hutchins II*, 767 F. Supp. 3d at 924; *Hutchins v. HP Inc.*, 737 F. Supp. 3d 851, 862–64 (N.D. Cal. 2024) ("*Hutchins I*").

As those courts have recognized, where the plan allows for "discretion as to how to allocate forfeitures," it is not a breach of the duty of loyalty to choose to apply forfeitures to offset employer contributions. *Brown v. Peco Foods, Inc.*, 2025 WL 3210857, at *6 (S.D. Miss. Nov. 14, 2025). That is so because allocating forfeitures as employer contributions is a way of using the funds to "provid[e] benefits to participants," exactly as the duty of loyalty requires—the reallocated funds are credited as employer contributions to other participants' accounts within the plan. 29 U.S.C. § 1104(a)(1); *see, e.g.*, *Tillery*, 2026 WL 125784, at *5 (dismissing forfeiture-based loyalty claim and noting "defendants used forfeitures to 'provid[e] benefits to participants and their beneficiaries' in the form of employer contributions" (quoting 29 U.S.C. § 1104(a)(1)(A)(i))); *Armenta*, 2025 WL 2645518, at *5 (dismissing claim and noting "forfeitures ultimately benefited

11

plan participants"); *Hutchins II*, 767 F. Supp. 3d at 925 (dismissing claim and noting forfeitures "were used—as required—to 'provid[e] benefits to participants and their beneficiaries'" (quoting 29 U.S.C. § 1104(a)(1)(A)(i))).  Plaintiff's claim is premised on the duty of loyalty going further to demand that fiduciaries maximize the amount of employer funds coming into a plan, but ERISA does not "create an exclusive duty to maximize pecuniary benefits." *Hutchins II*, 767 F. Supp. 3d at 924; *see Hernandez*, 2025 WL 3208360, at *4; *Dimou I*, 2024 WL 4508450, at *9.  Nor does the mere suggestion "of a possible conflict of interest automatically amount[] to a breach of ERISA's fiduciary duty of loyalty." *Hutchins II*, 767 F. Supp. 3d at 924; *see also, e.g.*, *del Bosque*, 2025 WL 3171326, at *5.  A plaintiff alleging disloyalty must provide "specific facts that move the needle on his claim from 'speculative' to 'plausible,'" *Hutchins II*, 767 F. Supp. 3d at 925, and as numerous courts have concluded, merely alleging that forfeitures were used to offset employer contributions—which is all the Complaint alleges here—does not clear the bar.

> b.      *Plaintiff's Allegations of Imprudence Mirror Those Courts Have Repeatedly Held Are Insufficient to State a Claim*

In addition to the duty of loyalty, ERISA imposes on fiduciaries a duty of prudence, which requires a fiduciary to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use … ." 29 U.S.C. § 1104(a)(1)(B).  The Complaint alleges that Defendants breached this duty, too, asking the Court to infer that Defendants did not use appropriate care because any prudent fiduciary would have felt compelled to use forfeitures to reduce expenses charged to participants. *See* Compl. ¶ 100.  Plaintiff's prudence claim fails for the same central reason as her loyalty claim: it attempts to convert a Plan design that allows forfeitures to be used for multiple purposes into a mandate that forfeitures be used to reduce participant expenses to the maximum extent possible.

12

As with Plaintiff's prudence claim, numerous decisions—including the recent in-Circuit decision in *Donelson*—have dismissed materially identical claims.

As courts have widely agreed, the very breadth of Plaintiff's theory of imprudence "makes it implausible," as it fails to account for the circumstances surrounding the challenged decision—context that the Supreme Court has emphasized is essential to the prudence inquiry under ERISA. *Hutchins I*, 737 F. Supp. 3d at 862 (citing *Dudenhoeffer*, 573 U.S. at 425); *see also, e.g.*, *Brewer*, 2025 WL 3527171, at *8; *Polanco*, 2025 WL 3003060, at *8; *Cain*, 2025 WL 2172684, at *5; *McWashington*, 2025 WL 1736765, at *14; *Barragan I*, 2024 WL 5165330, at *5; *Dimou I*, 2024 WL 4508450, at *9. The relevant "context" in this case includes both a Plan document that explicitly authorized use of forfeitures to offset employer contributions and decades of Treasury Department guidance endorsing that approach. Courts have recognized that both of those factors properly bear on the question of prudence and render allegations of imprudence implausible. *See, e.g.*, *Cano v. Home Depot, Inc.*, 2025 WL 2589567, at *6 (N.D. Ga. Aug. 26, 2025) (dismissing claim and explaining defendant's "actions align[ed] with decades of regulatory guidance, which speaks to the fiduciary's required consideration of the 'circumstances then prevailing' under § 1104(1)(a)(B)," and it was not "unreasonable or imprudent for [the defendant] to act … consistently with its own Plan documents and … regulations that have been effective for decades"), *appeal dismissed*, No. 25-13158-JJ, 2025 WL 3700579 (11th Cir. Dec. 1, 2025).

*Donelson* again comports with the great weight of the case law on this point. As in this case, the *Donelson* plaintiffs asked the Court to infer from the mere fact that forfeitures were used to offset employer contributions that the process for deciding how to use forfeitures must have been deficient. *See* 2025 WL 3754241, at *4. The court dismissed that claim, holding that the plaintiffs' imprudence theory "merely reframe[d]" their loyalty theory and failed for the same

13

reasons. *Id.* That was so even though in *Donelson*, as here, the complaint alleged in conclusory terms that the defendants failed to "investigate" whether there was a risk that the plan sponsor would default on its contribution obligations, "evaluate whether there were sufficient forfeitures to eliminate the … administrative expenses charged to participants and still offset a portion of [the sponsor's] contribution obligations," or "consult with independent non-conflicted decisionmakers to advise them in deciding upon the best course of action." *Id.*; *see* Compl. ¶¶ 67–69 (making virtually identical allegations). Because the Complaint ultimately does nothing more than "*speculating* that an ERISA fiduciary might not have conducted the requisite inquiry," it does not state a claim for breach of the duty of prudence. *Hutchins II*, 767 F. Supp. 3d at 927; *see also, e.g.*, *Polanco*, 2025 WL 3003060, at *8 (rejecting allegations about "defendants' particular decisionmaking process" as "too conclusory to establish a plausible entitlement to relief"); *Dimou II*, 2025 WL 2611240, at *6–7 (dismissing claims and explaining purported process-based allegations did "not materially change the alleged breach of the duty of prudence"); *Barragan II*, 2025 WL 2383652, at *4 (dismissing claims despite allegations regarding "failure to investigate what the best use of forfeitures was" where plaintiff "functionally" contended forfeitures always must be used first to pay plan expenses).

* * *

This Court should follow the many well-reasoned decisions that have rejected fiduciary breach claims materially the same as those advanced in this case, as well as the considered views of the Department of Labor supporting those decisions, and dismiss Counts I and II.

**B.      Plaintiff's Claim for Alleged Imprudent Delay in Using Forfeitures (Count III) Is Also Implausible and Must Be Dismissed**

While Plaintiff's claims focus primarily on Defendants' use of forfeitures to offset employer contributions rather than pay Plan administrative expenses, Plaintiff alleges in Count III

14

that Defendants breached ERISA's duty of prudence based on *when* forfeitures were used—*i.e.*, that Defendants failed to "promptly exhaust forfeited funds" by using them by the end of the year in which they were incurred. *See* Compl. ¶¶ 104–17. This theory of imprudence was also rejected in *Donelson* and should be rejected here for the same reasons.

In *Donelson*, as here, the complaint cited a 2010 IRS Newsletter that the plaintiffs asserted showed that forfeitures must be used by year end, such that the existence of any forfeiture balance at the end of the year plausibly suggested fiduciary imprudence. *Donelson*, 2025 WL 3754241, at *5; *see* Compl. ¶¶ 110–14. The court disagreed with the plaintiffs' reading of the IRS guidance, which the court held "merely requires *allocation* by year's end, rather than actual *use*." *Donelson*, 2025 WL 3754241, at *5; *see* 2010 Newsletter of the Employee Plans Office of the IRS Tax Exempt & Govt. Entities Div., at 4–5 (Ret. News for Employers, Vol. 7, Spring 2010), https://www.irs.gov/pub/irs-pdf/p4278.pdf. In fact, the Newsletter goes on to advise that "current year forfeitures" should "be used up promptly in the year in which they occurred *or in appropriate situations no later than the immediately succeeding plan year*." 2010 Newsletter at 5 (emphasis added). As the court recognized in *Donelson*, under that guidance, the mere existence of a forfeiture account balance at the end of a plan year does not plausibly suggest there has been any impermissible delay in allocating or using plan forfeitures. 2025 WL 3754241, at *5; *see also Tillery*, 2026 WL 125784, at *7 (dismissing similar claim and explaining "merely alleging that forfeiture balances existed does not give rise to an inference that defendants breached the duty of prudence"). And, as in *Donelson*, Plaintiff's claim of imprudent "delay" here rests entirely on the existence of a balance of unused forfeitures at the end of the year. *See* Compl. ¶ 114. Indeed, here, the amount of forfeitures used in each year from 2019 through 2024 far exceeded the

15

relatively small amount remaining at year end, *see* Compl. ¶¶ 47–57, a pattern that undercuts Plaintiff's conclusory allegation of undue delay in using forfeitures.

Moreover, as *Donelson* also explains, in 2023, the Treasury Department proposed a new rule that would have directly required plans to "'use forfeitures no later than 12 months after the close of the plan year in which the forfeitures are incurred.'" *Donelson*, 2025 WL 3754241, at *5 (quoting Use of Forfeitures in Qualified Retirement Plans, 88 Fed. Reg. 12282-01, 12284 (Feb. 27, 2023)).  "In other words, the IRS has recognized (and common sense confirms) that it is sometimes practical to not immediately use forfeitures," *id.*, which may occur at any time, including mere days or weeks before the end of the plan year.  As *Donelson* confirms, ERISA does not compel plans to reduce forfeiture balances to zero by the end of every plan year, no matter the circumstances.

> **C.**     **The Complaint Does Not State a Claim for Violation of ERISA's Anti-Inurement Rule**

Like Counts I and II, Plaintiff's anti-inurement claim in Count IV rests on the core theory that ERISA precludes use of forfeitures to offset employer contributions rather than to pay Plan expenses, and courts have been no more receptive to that theory when framed as a violation of ERISA's anti-inurement rules.  *See, e.g.*, *Madrigal v. Kaiser Found. Health Plan, Inc.*, 2025 WL 1299002, at *6 (C.D. Cal. May 2, 2025) (citing cases dismissing forfeiture-based anti-inurement claims).

Under ERISA's anti-inurement rule, "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan."  29 U.S.C. § 1103(c)(1).  The rule "focuses exclusively on whether fund assets were used to pay pension benefits to plan participants," *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 442 (1999),

with the aim of "protect[ing] participants' expected payments by preventing employers from diverting funds to themselves," *Maez v. Mountain States Tel. & Tel.*, 54 F.3d 1488, 1506 (10th Cir. 1995) (quotations omitted); *see Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1, 23 (2004). The anti-inurement rule accordingly is violated "if there has been a removal of plan assets for the benefit of the plan sponsor or anyone other than the plan participants." *Aldridge v. Lily-Tulip, Inc. Salary Ret. Plan Benefits Comm.*, 953 F.2d 587, 592 n.6 (11th Cir. 1992). But if all assets remain in the plan and are not "used in any way other than to pay benefits to participants and beneficiaries," there is no anti-inurement violation. *Maez*, 54 F.3d at 1506; *see also, e.g.*, *Krohnengold v. New York Life Ins. Co.*, 2022 WL 3227812, at *11 (S.D.N.Y. Aug. 10, 2022).

As courts have held in dismissing forfeiture-based anti-inurement claims like those asserted here, use of forfeitures as employer contributions does not pose an anti-inurement problem, because it does not involve removal of assets from the plan or use of plan assets "for a purpose other than to pay … obligations to … beneficiaries." *Hernandez*, 2025 WL 3208360, at *5 (quoting *Hughes Aircraft*, 525 U.S. at 442–43); *see also, e.g.*, *Wright*, 2025 WL 1683642, at *5–6 (dismissing anti-inurement claim because plaintiff did not allege defendants removed any of the forfeited assets from the plan); *Madrigal*, 2025 WL 1299002, at *6 (plaintiff's "failure to allege that any assets left the Plan" was "sufficient to foreclose" anti-inurement theory). The allocation of forfeitures occurs *within* the plan, and forfeitures allocated as employer contributions are held for the "purpose of providing benefits" to the participants who receive them. *See Garner v. Northrop Grumman Corp.*, 2025 WL 3488657, at *5 (E.D. Va. Dec. 4, 2025); *Barragan I*, 2024 WL 5165330, at *7; *Dimou I*, 2024 WL 4508450, at *10. It does not matter that a plan sponsor may *indirectly* benefit from allocation of forfeitures as employer contributions (and the resulting

17

reduction in the amount it is required to pay out-of-pocket to satisfy its contribution obligations), because such "incidental benefits" to an employer "do not constitute a breach of the anti-inurement provision." *Sievert v. Knight-Swift Transportation Holdings, Inc.*, 780 F. Supp. 3d 870, 880 (D. Ariz. 2025); *see Tillery*, 2026 WL 125784, at *7; *Hernandez*, 2025 WL 3208360, at *5; *Middleton v. Amentum Parent Holdings, LLC*, 2025 WL 2229959, at *17 (D. Kan. Aug. 5, 2025); *Hutchins I*, 737 F. Supp. 3d at 866; *see also Holliday*, 732 F.2d at 551–52 (holding there is "no violation of either the letter or the spirit of ERISA" where assets are allocated in a way that "benefit[s] the employees" and has only "the incidental side effect of being prudent from the employer's economic perspective").

Because the Complaint does not allege that any forfeitures left the Plan or were used for a purpose other than providing benefits to participants (in the form of employer contributions), the Complaint does not state a claim for violation of ERISA's anti-inurement provision, and Count IV should be dismissed.

### D. The Complaint Fails to State a Prohibited Transaction Claim

In yet another variation on the same theme, Plaintiff alleges in Counts V and VI that Humana's use of forfeitures to offset employer contributions violated ERISA's prohibited transaction rules, which supplement ERISA's general fiduciary duty provisions by setting forth "certain types of transactions between a plan and other parties that are per se prohibited" absent an exemption. *Liao v. Fisher Asset Mgmt., LLC*, 2025 WL 1696556, at *4 (N.D. Cal. June 16, 2025), *appeal docketed*, No. 25-4379 (9th Cir. July 16, 2025); *see also Cunningham v. Cornell Univ.*, 604 U.S. 693, 696–97 (2025). Count V asserts a violation of Section 406(a), which bars fiduciaries from causing the plan to enter into specified transactions with a "party in interest," 29 U.S.C. § 1106(a), and Count VI asserts a violation of Section 406(b), which prohibits transactions

18

that involve fiduciary "self-dealing," *id.* § 1106(b).[2] Once again, Plaintiff's allegations suffer from fundamental pleading defects that have led numerous courts to dismiss analogous claims.

As an initial matter, by their terms, ERISA's prohibited transaction rules govern only fiduciary conduct. *See* 29 U.S.C. § 1106(a)(1) ("A fiduciary with respect to a plan shall not cause the plan to engage in a transaction … "); *id.* § 1106(b) ("A fiduciary with respect to a plan shall not …"). As explained above, the Complaint does not (and cannot) plausibly allege that the choice to use forfeitures as employer contributions was made in a fiduciary capacity. *See supra* § IV.A.1. That alone suffices to preclude Plaintiff's prohibited transaction claims. *See, e.g.*, *Naylor*, 2024 WL 4112322, at *7 (dismissing forfeiture-based prohibited transaction claims for lack of relevant fiduciary status).

Even if the relevant choice were a fiduciary one, the Complaint still would fail to state a viable prohibited transaction claim. "Numerous recent decisions … have held that the allocation of forfeitures to offset employer contributions is not a 'prohibited transaction' or self-dealing under § 1106." *Brown*, 2025 WL 3210857, at *8. As those courts have recognized, use of forfeitures as employer contributions involves only reallocation of funds *within a plan*; there is no "transaction" between the plan and a party in interest or fiduciary (or anyone else). *See, e.g.*, *Tillery*, 2026 WL 125784, at *8 (dismissing forfeiture-based prohibited transaction claims and concluding there was no "transaction prohibited by section 1106" where "[n]o assets left the Plan, and defendants paid contributions to participants"); *Liao v. Fisher Asset Mgmt., LLC*, 2024 WL 4351869, at *5 (N.D.

---

[2] Specifically, Plaintiff asserts that, by allocating forfeitures to reduce employer contributions, Defendants "caused the Plan to engage in transactions that constituted a direct or indirect exchange of existing Plan assets for future employer contributions and/or a use of Plan assets by or for the benefit of a party interest" in violation of ERISA § 406(a)(1), Compl. ¶ 129, and "dealt with the assets of the Plan in their own interest, for the Benefit of Defendant Humana, and for their own account" in violation of ERISA § 406(b)(1), Compl. ¶ 137.

19

Cal. Sept. 30, 2024) (dismissing claim and holding "redistribution within a plan does not constitute a 'transaction'"); *Dimou I*, 2024 WL 4508450, at *11 ("An intra-plan transaction, like forfeiture reallocation, is unlike a sale or leasing of property to a third-party."); *see also Black v. Greater Bay Bancorp Exec. Supplemental Comp. Benefits Plan*, 2017 WL 8948732, at *8–9 (N.D. Cal. Jan. 18, 2017) (holding that use of funds available to satisfy one plan benefit to fund a different plan benefit was not a "transaction"); *Chao v. Hagemeyer N. Am., Inc.*, 2006 WL 8443663, at *6 (D.S.C. Oct. 20, 2006) ("exchanges or 'reallocations' between accounts of plan participants" were not "transactions").

Courts confronting similar claims have also held that even if reallocation of funds within the plan could be construed as a "transaction" between the plan and someone else, it still would not be the type of transaction that is barred by ERISA § 406. As the Supreme Court has explained, the prohibited transaction rules are designed to prohibit "commercial bargains" that "are potentially harmful to the plan" "because they are struck with plan insiders, presumably not at arm's length." *Spink*, 517 U.S. at 893. Payment of benefits is not a "transaction" under section 406, because it does not share the characteristics common to the "transactions" barred by that provision. *Id.* at 893–94. The same is true when forfeitures are allocated to participant accounts as employer contributions, as multiple courts have concluded in dismissing claims materially indistinguishable from those asserted here. "Employer contributions … are benefits," and thus "the intra-plan reallocation of forfeitures to cover employer contributions is a 'payment of benefits'" under *Spink*—and not a "transaction" prohibited under ERISA § 406(a) or (b). *Polanco*, 2025 WL 3003060, at *10; *see also, e.g.*, *Brown*, 2025 WL 3210857, at *8 (citing *Spink* and dismissing forfeiture-based prohibited transaction claims); *Hernandez*, 2025 WL 3208360,

20

at *5–6 (same); *Hutchins II*, 767 F. Supp. 3d 928–29 (same); *Hutchins I*, 737 F. Supp. 3d at 868 (same); *Barragan I*, 2024 WL 5165330, at *7 (same).

**E.      Plaintiff's Derivative Claim for Failure to Monitor Fails as a Matter of Law**

Finally, Plaintiff alleges in Count VII that Humana violated ERISA by failing to adequately monitor the fiduciaries charged with administering forfeitures under the Plan.  *See* Compl. ¶¶ 141–149.  As courts have repeatedly recognized in the forfeiture context and beyond, a "failure to monitor claim is only viable when there is an underlying claim for breach of fiduciary duty." *Sievert*, 780 F. Supp. 3d at 881; *see also, e.g.*, *Tillery*, 2026 WL 125784, at *9 (dismissing failure to monitor claim in forfeiture case because the "other ERISA claims fail"); *Estay v. Ochsner Clinic Found.*, 2025 WL 2644782, at *7 (E.D. La. Sept. 15, 2025) (dismissing failure to monitor claim in forfeiture case because it "is derivative of the other claims").  Because the Complaint does not plausibly allege "any underlying breaches of fiduciary duty," it also fails to plausibly allege "a corresponding failure to monitor."  *Donelson*, 2025 WL 3754241, at *6.  Count VII accordingly should be dismissed along with the rest of the Complaint.

**V.      CONCLUSION**

The Complaint should be dismissed in its entirety.

Dated:  January 20, 2026

Respectfully submitted,

/s/ Catalina Vergara
Catalina Vergara (admitted *pro hac vice*)
Noah Ickowitz (admitted *pro hac vice*)
O'MELVENY & MYERS LLP
400 South Hope Street, 19th Floor
Los Angeles, CA 90071-2811
Telephone: 213-430-6000
Facsimile: 213-430-6407
cvergara@omm.com
nickowitz@omm.com

Deanna M. Rice (admitted *pro hac vice*)
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006-4061
Telephone: 202-383-5300
Facsimile: 202-383-5414
derice@omm.com

Michael P. Abate
KAPLAN JOHNSON ABATE & BIRD LLP
710 West Main Street, 4th Floor
Louisville, KY 40202
Telephone: 502-416-1630
Facsimile: 502-540-8282
mabate@kaplanjohnsonlaw.com

*Attorneys for Defendants*
*Humana Inc. and the Humana Retirement Plans*
*Committee*

22